UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-cv-10077-DPW

KARYN DRAGO

    Plaintiff

v.

RYAN FRIAS, JOHN GAUDET,
JAMES JOHNSON, DENNIS KING,
SALEM POLICE DEPARTMENT
CITY OF SALEM, MA

    Defendants

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### I.    INTRODUCTION

This is an action in which the Plaintiff Karyn Drago alleges the Defendants wrongfully arrested her based upon her daughter Amanda Coco's accusations of domestic assault, threats to commit a crime, criminal harassment, violation of a restraining order and witness intimidation. The Plaintiff's claims are as follows:

    Count I –    Unreasonable Search and Seizure per the Fourth Amendment to the US Constitution and Article XIV of the Massachusetts Declaration of Rights v. Ryan Frias, John Gaudet, the Salem Police Department and the City of Salem; and

    Count II –    Unreasonable Search and Seizure per the Fourth Amendment to the US Constitution and Article XIV of the Massachusetts Declaration of Rights v. James Johnson, Dennis King, the Salem Police Department and the City of Salem.

It should be noted at the outset that the "Salem Police Department" is not a proper party for purposes of suit and any claim against it is not cognizable because the police department is not a legal entity subject to suit. The police department is a departmental agency of the City of

Salem; "it is a non-person and consequently is not subject to suit." *Darsch* v. *Lynch*, 2016 U.S. Dist. LEXIS 4830, at *13 (D. Mass. Jan. 13, 2016) (citing *Johnson* v. *Rodriguez*, 943 F.2d 104 (1st Cir. 1991)).

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." *Schatz* v. *Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). The Court reads the complaint "as a whole" and must conduct a two-step, context-specific inquiry. *García-Catalán* v. *United States*, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory allegations. *Id*. Factual allegations must be accepted as true, while conclusory allegations are not credited. *Id*. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." *Haley* v. *City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks omitted).

Pleadings that fail to include "enough facts to state a claim to relief that is plausible on its face" must be dismissed. *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The Court draws on its "judicial experience and common sense" in determining whether a claim crosses the plausibility threshold. *García-Catalán*, 734 F.3d at 103 (internal quotation marks and citation omitted).

Ordinarily, a court may not consider documents outside of the complaint without converting a motion to dismiss into one for summary judgment. *Watterson* v. *Page*, 987 F.2d 1,

3 (1st Cir. 1993). Exceptions to this rule exist, however, "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citations omitted). Here, the Defendants attach the January 17, 2019 Salem Police Department Case/Incident Report (Exhibit 1); and the February 2, 2019 Salem Police Department Case/Incident Report (Exhibit 2), neither of which warrant converting this motion into a motion for summary judgment.

### III. FACTUAL BACKGROUND

The Defendants accept the factual allegations of the Complaint as true for purposes of the motion to dismiss but disregard conclusory allegations and legal arguments/labels couched as facts. See *Garcia-Catalan*, 734 F.3d at 103.

On January 17, 2019, the Plaintiff's daughter, Amanda Coco, reported to City of Salem Police Officer Ryan Frias a series of domestic threats that Coco apparently received from the Plaintiff. As part of her report to Officer Frias, Coco provided emails she contended were from the Plaintiff containing some of the threatening and harassing statements.

Based upon Coco's report, Officer Frias determined there was probable cause to arrest the Plaintiff for 1) domestic assault under M.G.L. c. 265, § 13A; 2) threats to commit a crime under M.G.L. c. 275, § 2-4; and 3) criminal harassment under M.G.L. c. 265, § 43A. Officer Frias advised the Methuen Police Department of the incident; Methuen police officers subsequently arrested the Plaintiff. On January 18, 2019, the Plaintiff was arraigned in Salem District Court. On the same date, Coco obtained a 209A restraining order against the Plaintiff.

On February 2, 2019, Coco reported to City of Salem Police Officer James Johnson that on that date the Plaintiff contacted Coco by email in an intimidating manner. Based upon Coco's

report and the emails she provided, Officer Johnson determined there was probable cause to arrest the Plaintiff for two counts of violating the 209A restraining order's no-contact provision and two counts of witness intimidation. Methuen police officers subsequently arrested the Plaintiff. On February 4, 2019, the Plaintiff was arraigned in Salem District Court.

All charges were nolle-prossed by the District Attorney's Office in May 2019. Ultimately, it was discovered that the emails which Coco provided to Officers Frias and Johnson on January 17 and February 2, 2019 were not written by the Plaintiff, but by Coco herself.

### IV.  ARGUMENT

**A. THE COMPLAINT FAILS TO STATE A CLAIM OF UNREASONABLE SEARCH AND SEIZURE PURSUANT TO THE FOURTH AMENDMENT AND ARTICLE XIV AND COUNTS I AND II MUST BE DISMISSED**

i.   <u>There was probable cause for the Plaintiff's arrests</u>.

There was probable cause for the Plaintiff's arrests and thus Counts I and II must be dismissed. "There is significant overlap between the Fourth Amendment and Article XIV because both rights protect against undue searches and seizures and the ultimate touchstone of both the Fourth Amendment and art. 14 is reasonableness." *Muldoon* v. *Department of Correction*, Civil Action No. 15-cv-13892-DJC, 2017 U.S. Dist. LEXIS 17105, at *26-27 (D. Mass. Feb. 7, 2017) (quoting *Commonwealth* v. *Rodriguez*, 472 Mass. 767 (2015)). To be valid under the Fourth Amendment and Article 14, an arrest must be based on probable cause. *Hoffman* v. *Reali*, 973 F.2d 980, 985 (1st Cir. 1992) (citation omitted); *Commonwealth* v. *Bottari*, 395 Mass. 777, 783 (1985) (citations omitted).

"Probable cause is a relatively low threshold[.]" *White* v. *Town of Marblehead*, 989 F. Supp. 345, 349 (D. Mass. 1997). "[P]robable cause exists when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information

4

were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *Rivera* v. *Murphy*, 979 F.2d 259, 263 (1st Cir. 1992) (internal quotation marks and citations omitted). Certainty is *not* required. *Commonwealth* v. *Figueroa*, 74 Mass. App. Ct. 784, 788 (2009). "Moreover, the standards employed for determining whether the government has met its constitutional burdens must be informed by the practical demands of police investigation." *Id.* This is important to note where, as here, the Plaintiff's Complaint faults the Defendants for failing to investigate the ownership of the email accounts and messages at issue prior to her arrests.

Notably, "[t]he uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause." *Acosta* v. *Ames Dep't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004) (citations omitted). Here, Coco reported to Officer Frias on January 17, 2019 the following:

- *She received a blocked phone call from [the Plaintiff] where she began a verbal attack on her. [Coco] stated that over the phone they began to argue and [the Plaintiff] stated that she was going to go to her house and shoot the house and kill [her];*

- *She is in fear because she believes that there may be guns inside the residence;*

- *She is in fear of what [the Plaintiff] may be capable of doing;*

- *[Coco] believed that [the Plaintiff] has the ability to carry out the threat;*

- *[The Plaintiff] abuses drugs and alcohol and is never sober;* and

- *[Coco's] father had recently passed away and [] he was a gun owner ... [Coco] is unsure as to what happened to the firearms, but believes they may still be in the home.*

(Def. Exhibit 1). Coco also provided to Officer Frias emails which she represented were from the Plaintiff at karynhoff1234@gmail.com to Coco, and which stated in pertinent part:

- *You should of saved me and the family trouble and just kicked the milk crate*

> *from underneath you;*
>
> - *Mike and I will leave you guys alone when we have you 6 feet in the ground;*
>
> - *Mike and I will absolutely make sure of it you guys will be dead before you guys take Lilly out of this house;*
>
> - *I will show up to your house I will make your life hell I will send people after the 2 of you;* and
>
> - *Actually please do go tie that rope up and put it around your neck again and this time please do kill yourself.*

(Def. Exhibit 1). Based upon Coco's statements and the emails provided, Officer Frias determined there was probable cause to arrest the Plaintiff for domestic assault, threats to commit a crime, and criminal harassment. This determination was reasonable.[1]

Further, Coco reported to Officer Johnson on February 2, 2019 the following:

> - *She received two emails sent to her phone by [the Plaintiff]. The times were approximately 1:47PM and 5:08PM;* and
>
> - *The manner in which the emails were written with regards to grammar and spelling etc. shows that the [Plaintiff] was intoxicated when she wrote them.*

(Def. Exhibit 2). Coco showed Officer Johnson the emails purportedly from the Plaintiff at karynguillette61@gmail.com, which stated in pertinent part:

> - *Listen Amanda don't be a b**** and go to the cops let me say my peace;*
>
> - *If you or Jimmy think about going to the cops I will call DCF and tell them I no longer want to care for Lilly and they can come take her and you can f****** wait;* and

---

[1] See *Commonwealth* v. *Kelly*, 470 Mass. 682, 703 (2015) (citations omitted) ("Assault is defined as either a threat to use physical force on another, or an attempt to use physical force on another."); *Commonwealth* v. *Robicheau*, 421 Mass. 176, 183 (1995) (citations omitted) ("The elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances, that would justify apprehension on the part of the recipient of the threat."); *Commonwealth* v. *Brennan*, 481 Mass. 146, 149-50 (2018) (internal quotation marks and citations omitted) (The elements of criminal harassment are "(1) the defendant engaged in a knowing pattern of conduct or speech, or series of acts, on at least three separate occasions; (2) the defendant intended to target the victim with the harassing conduct on each occasion; (3) the conduct was of such a nature that it seriously alarmed the victim; (4) the conduct was of such a nature that it would cause a reasonable person to suffer substantial emotional distress; and (5) the defendant committed the conduct willfully and maliciously").

- *... I told you I was sorry I told you I would pay you back over time to drop the charges we don't need to go to court and you don't need to press charges against me I said I would pay you back.*

(Def. Exhibit 2). Officer Johnson determined there was probable cause to believe that the no-contact provision of the 209A restraining order was violated and that the Plaintiff engaged in witness intimidation. This probable cause determination was reasonable.[2]

As such, Counts I and II must be dismissed.

    ii.    <u>There was no duty to further investigate</u>.

The crux of the Plaintiff's Complaint is that the Defendants failed to investigate the ownership of the email accounts prior to her arrests. However, "[a]n officer who reasonably believes that he has probable cause to make an arrest has no duty to investigate a suspect's claims of innocence. To the contrary, the law discourages officers from taking it upon themselves to make such determinations." *DeToledo* v. *County of Suffolk*, 379 F. Supp. 2d 138, 144 (D. Mass. 2005) (internal citations omitted). "The rule [] applicable in the wide mine-run of cases, is that once a law enforcement officer unearths sufficient facts to establish probable cause, he has no constitutional duty either to explore the possibility that exculpatory evidence may exist or to conduct any further investigation in hope of finding such evidence." *Acosta*, 386 F.3d at 11.

Specifically, the First Circuit in *Holder* v. *Town of Sandown*, 585 F.3d 500 (1st Cir. 2009) plainly rejected the plaintiff's assertion that when an officer has knowledge of a bad relationship between the suspect and witness, the witness's credibility must be considered

---

[2] See *Commonwealth* v. *Welch*, 58 Mass. App. Ct. 408 (2003) (internal quotation marks and citations omitted) ("In order to establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid G. L. c. 209A order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order."); *Commonwealth* v. *Falcon*, No. 09-P-791, 2010 Mass. App. Unpub. LEXIS 289, at *2 (App. Ct. Mar. 18, 2010) (quoting *Commonwealth* v. *Pagels*, 69 Mass. App. Ct. 607 (2007)) (The elements of the crime of intimidating a witness are "(1) the target of the alleged intimidation was a witness in a stage of a criminal proceeding, (2) the defendant wilfully endeavored or tried to influence the target, (3) the defendant did so by means of intimidation, force, or threats of force, and (4) the defendant did so with the purpose of influencing the complainant as a witness").

questionable, and the officer must investigate further prior to arrest. *Id.* at 505. The court explained: "In many simple assault situations, there are bound to be accusations and recriminations based either on the immediate circumstances or the parties' long-term relationship. To say that all such situations require an exception to the general rule would amount to an evisceration of the rule." *Id.* at 506.

While "knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations" may trigger an officer's duty of further inquiry, *United States* v. *Tanguay*, 787 F.3d 44, 53 (1st Cir. 2015), the Complaint contains no such allegations. Compare *id.* (finding officer had reason to doubt veracity of informant where fellow officer stated the informant was "quirky," "troubled," "possibly afflicted by some degree of mental instability" and where the informant's history included an altered prescription conviction and other "scrapes" with the law); see also *B.C.R. Transp. Co.* v. *Fontaine*, 727 F.2d 7 (1st Cir. 1984) (finding lack of probable cause where witness "seemed to be affected by some kind of mind-altering substance" and was "heard yelling obscenities and repeating incoherent phrases" while in police station).

"While in this case, the victim's version ultimately proved to be unreliable, permitting the police to rely on a victim's credible statement in order to determine probable cause is critical. The officers are obliged to make split-second decisions. Once there is probable cause to believe that a crime has taken place, the law has recognized the need for urgent and decisive action. For all they know at the time, lives may hang in the balance. This is particularly the case with complaints of domestic violence, which have been ignored too often, with tragic results." *White*, 989 F. Supp. at 350.

Counts I and II must be dismissed in their entirety. See *McInnis* v. *Maine*, 638 F.3d 18, 22 n.4 (1st Cir. 2011) ("Because there was probable cause … there is no basis for liability on the

part of the primary officers, supervisors, or a [Monell] Claim.").

      iii.  <u>Alternatively, the Defendants are entitled to qualified immunity</u>.

  Alternatively, the Defendants are entitled to qualified immunity.  Whether the doctrine of qualified immunity applies is a question of law.  *Tatro* v. *Kervin*, 41 F.3d 9, 15 (1st Cir. 1994). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.  Moreover, because the entitlement is an *immunity from suit* rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter* v. *Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks and citations omitted).

  The First Circuit has set out the following test for determining whether qualified immunity is applicable: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable official, similarly situated to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right."  *Limone* v. *Condone*, 372 F.3d 39, 44 (1st Cir. 2004).

  "As to the second and third questions, while there is little doubt as to the clarity of the constitutional rights to be free from unreasonable searches and seizures generally, the Supreme Court has cautioned the lower courts 'not to define clearly established law at a high level of generality.'"  *Santiago* v. *Lafferty*, Civil Action No. 13-12172-IT, 2017 U.S. Dist. LEXIS 49177, at *30 (D. Mass. Mar. 31, 2017) (quoting *Mullenix* v. *Luna*, 577 U.S. 7 (2015)).  "Recognizing that it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts, the Court directs inquiry into whether the violative nature of *particular* conduct is clearly established. Thus any formulation of the clearly

established right must be tailored to the precise context presented by the facts of the case." *Id.* at *31 (internal quotation marks and citations omitted).

As such, the question becomes "whether another officer, standing in [the Defendants'] shoes and having the same information [they] had, might reasonably have come to the conclusion that [they] had probable cause[,]" *Hoffman*, 973 F.2d at 986, or whether it was clearly established that the Defendants' probable cause determinations and the Plaintiff's subsequent arrests based upon Coco's statements and the emails she provided violated the Plaintiff's constitutional rights.

"The critical point here is that [the Defendants] are entitled to qualified immunity so long as their decision was reasonable, *even if mistaken*." *Joyce* v. *Town of Tewksbury*, 112 F.3d 19, 23 (1st Cir. 1997) (emphasis in original) (internal quotation marks and citations omitted). The Defendants' decision to arrest the Plaintiff was reasonable and qualified immunity applies. See *Santiago*, Civil Action No. 13-12172-IT, 2017 U.S. Dist. LEXIS 49177, at *33 ("the record includes little to show that Defendant Golner willfully turned a blind eye to [the informant's] potential fabrications or had direct knowledge of [his fellow officer's] unjustified reliance on [the informant's] tips….and Plaintiff does not proffer facts contradicting Defendant Golner's own testimony as to possessing not only an investigatory motive for the search, but also [] a simultaneous belief as to its justification….Qualified immunity therefore shields Defendant Golner from trial").

Thus, Counts I and II must be dismissed.

### B. THE COMPLAINT FAILS TO STATE A CLAIM FOR SUPERVISORY LIABILITY AGAINST LIEUTENANTS GAUDET AND KING

To the extent the Plaintiff's claims against Lieutenants Gaudet and King are premised solely upon a theory of supervisory liability, the Plaintiff's claims against them fail. "To connect

the liability dots successfully between supervisor and subordinate in this context, a plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights <u>and</u> that the supervisor's (in)action was affirmatively linked to that behavior in the sense that it could be characterized as gross negligence amounting to deliberate indifference." *Justiniano* v. *Walker*, 986 F.3d 11, 20 (1st Cir. 2021) (internal quotation marks and citations omitted) (emphasis in original).  "[T]he causal link between a supervisor's conduct and the constitutional violation must be solid." *Id.* (internal quotation marks and citation omitted).

Moreover, "mere negligence will not suffice: the supervisor's conduct must evince reckless or callous indifference to the constitutional rights of others." *Id.* (internal quotation marks and citations omitted).  "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Febus-Rodriguez* v. *Betancourt-Lebron*, 14 F.3d 87, 92 (1st Cir. 1994) (citation omitted).

"An important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned, acquiesced, or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens.  One cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires taking affirmative steps." *Id.* at 93 (quoting *Lipsett* v. *University of P.R.*, 864 F.2d 881 (1st Cir. 1988)).

Not only was there no constitutional violation for the reasons set forth in Section IV.A(i) and (ii), but the Complaint also lacks any factual allegations satisfying the remaining elements of deliberate indifference and causation.

Therefore, any such claim against Lieutenants Gaudet and King must be dismissed.

### C. THE COMPLAINT FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY AGAINST THE CITY OF SALEM

A municipality can be liable in certain instances where its agents and employees commit constitutional violations, but not under a theory of *respondeat superior*. *Young* v. *City of Providence*, 404 F.3d 4, 25 (1st Cir. 2005) (citation omitted). The Supreme Court has set a "very high bar" for municipal liability. *Id.* at 26. "[A] plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, through its <u>deliberate</u> conduct, the municipality was the moving force behind the injury alleged. Such a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury." *Haley*, 657 F.3d at 51 (internal quotation marks and citations omitted) (emphasis in original).

Not only was there no constitutional violation for the reasons set forth in Section IV.A(i) and (ii), but the Complaint wholly fails to identify any municipal policy or custom causing the alleged injury to the Plaintiff.

Therefore, any such claim against the City of Salem must be dismissed.

### CONCLUSION

For the above stated reasons, the Defendants, Ryan Frias, John Gaudet, James Johnson, Dennis King, and the City of Salem respectfully request that this Court dismiss the Plaintiff's Complaint in its entirety.

Respectfully submitted,

Defendants,

By their attorneys,

*/s/ Elizabeth F. Scian*
Douglas I. Louison (BBO# 545191)
Elizabeth F. Scian (BBO# 706565)
Louison, Costello, Condon & Pfaff, LLP

Ten Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305

Date: February 4, 2022

## CERTIFICATE OF SERVICE

    I, Elizabeth F. Scian, hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants February 4, 2022.

*/s/ Elizabeth F. Scian*
Elizabeth F. Scian