UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KARYN DRAGO,<br><br>               Plaintiff,<br><br>        v.<br><br>RYAN FRIAS, JOHN GAUDET,<br>JAMES JOHNSON, DENNIS KING,<br>SALEM POLICE DEPARTMENT,<br>and CITY OF SALEM,<br><br>               Defendants. | Case No. 22-cv-10077-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                               September 5, 2023

## I.      Introduction

Plaintiff Karyn Drago ("Drago") has sued several individual police officers, Ryan Frias, John Gaudet, James Johnson and Dennis King, the City of Salem, Massachusetts (the "City"), and the Salem Police Department (collectively, "Defendants"), arguing that she was arrested without probable cause. D. 1-1. Defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). D. 6. For the reasons discussed below, the Court ALLOWS the motion.

## II.    Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103

1

(1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678). On a Rule 12(b)(6) motion, the Court may also consider documents incorporated into the complaint, as well as "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

### III.  Factual Background

The following summary is based upon the well pled allegations in the complaint, presumed to be true for the purposes of resolving the motion to suppress.

#### A.  Two Arrests of Drago on Coco's Complaints

Drago's complaint concerns her arrests, one on January 17, 2019, and one on February 2, 2019. D. 1-1 ¶¶ 8–19. Both arose from complaints made by Drago's daughter, Amanda Coco ("Coco"). Id. ¶¶ 8, 15. The first arrest occurred following complaints that Coco made on January 17, 2019, to Officer Frias and the Salem Police Department. Id. ¶ 8. The complaints were against Drago for domestic assault, threats to commit a crime, and criminal harassment. Id. Coco had based her complaints on emails that Drago allegedly sent from karynhoff1234@gmail.com to her at Amandagetchell87@gmail.com. Id. ¶ 9. The Salem Police Department issued an arrest command to the police department in Methuen, where Drago resides, and she was arrested on the

same date, January 17, 2019. Id. ¶ 10. She was arraigned the next day in the Salem District Court on criminal harassment and threat to commit crime charges. Id. ¶ 11. Drago was held in custody for one day for this arrest. Id. ¶ 13. After this first arrest, Coco obtained a restraining order against Drago. Id. ¶ 12.

The second arrest on February 2, 2019 occurred after Coco complained to Officer Johnson that Drago violated the restraining order and intimidated her. Id. ¶ 15. This time, Coco claimed that Drago emailed her from karynguillette61@gmail.com. Id. ¶ 16. Officer Johnson, Lieutenant King and the Salem Police Department issued another arrest command to the Methuen Police Department. Id. ¶ 17. Drago was arrested that same day, February 2, 2019, by the Methuen Police Department and arraigned in Salem District Court on February 4, 2019, for two counts of witness intimidation and two counts of violating a c. 209A restraining order. Id. ¶ 18. She was in custody for two days for this arrest. Id. ¶ 17.

As alleged by Drago, she never used either email address Coco identified in her reports to police. Id. ¶¶ 9, 16. Also as alleged here, a later investigation showed that Coco owned the emails karynhoff1234@gmail.com and karynguillette61@gmail.com and apparently created the emails and sent them to herself at Amandagetchell87@gmail.com. Id. All charges against Drago were nolle-prossed in May 2019. Id. ¶¶ 14, 19.

## IV. Procedural History

Drago initiated this lawsuit on January 10, 2022 in Essex Superior Court. D. 1-1. Defendants removed it here on January 20, 2022. D. 1. Defendants have since moved to dismiss. D. 6. The Court (Woodlock, J.) heard oral argument on the motion and took the matter under advisement. D. 19. This case was transferred to this session on June 28, 2023. D. 20. This Court gave the parties the opportunity for oral argument regarding the motion in this session, D. 21, which the Court held on July 25, 2023. D. 25. This Court has considered the parties' filings, D.

6-8, 9, 11, 13, 26, the transcript of the oral argument before Judge Woodlock, D. 21, and the parties' oral argument in this session in resolving this motion.

Drago asserts two counts in the complaint; Count I relates to her January 17, 2019 arrest and Count II relates to her February 2, 2019 arrest. D. 1-1 ¶¶ 20–26. Count I is asserted against Frias, Gaudet, the Salem Police Department, and the City of Salem for "breach[ing]" a "duty of care" owed to her "to protect her from an unreasonable search and seizure per the Fourth Amendment to the U.S. Constitution and Article XIV of the Massachusetts Declaration of Rights." Id. ¶¶ 20–22. The second count makes the same allegations, but as it relates to the February 2, 2019 arrest and is asserted against Johnson, King, the Salem Police Department and the City of Salem. Id. ¶¶ 23–26.

## V. Discussion

Since Drago only cites the U.S. Constitution and the Massachusetts Declaration of Rights in the complaint, D. 1-1 ¶¶ 20, 24, the Court treats her claims as arising under 42 U.S.C § 1983, which provides a mechanism for individuals to sue state actors for violations of civil rights. However, "[t]he Massachusetts Declaration of Rights does not provide a private right of action." Nesbitt v. Wellpath, No. 20-cv-12126-FDS, 2022 WL 617514, at *6 (D. Mass. Mar. 2, 2022). Even if the Court liberally construed her state constitutional claims as brought under the Massachusetts Civil Rights Act ("MCRA"), those claims would be futile as the MCRA requires that a person's rights were interfered with by "threats, intimidation or coercion," Mass. Gen. L. c. 12, § 11H, to state a claim and Drago has not so alleged that here. Accordingly, the Court construes Drago's claims under § 1983, as Defendants have done.

### A. Salem Police Department

As Defendants point out in their motion to dismiss, the Salem Police Department is not a proper party because it is a departmental agency of the city and so "a non-person [that]

consequently is not subject to suit." Darsch v. Lynch, No. 15-13466-WGY, 2016 WL 299037, at *5 (D. Mass. Jan. 13, 2016) (citing Johnson v. Rodriguez, 943 F.2d 104 (1st Cir. 1991)). Accordingly, the Court dismisses both claims against the Salem Police Department.

### B. City of Salem

As to the City, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. Consequently, for a government to be liable under § 1983, the government's "policy or custom" must be "the moving force of the constitutional violation." Id.; see Silva v. Worden, 130 F.3d 26, 30–31 (1st Cir. 1997).

In light of this burden of proof, the claims against the City fail. Drago has not shown how the police officers' probable cause determinations, under these circumstances, reflect a "policy or custom" tied to the alleged constitutional violations. She describes simply the actions taken by individual officers on two occasions and alleges nothing regarding a policy or custom belonging to the City. Nor do her allegations of wrongdoing by the officers on their face indicate that a policy or custom may have existed. In the absence of such plausible allegations, the Court dismisses both claims against the City.

### C. Individual Officers

#### 1. Officers are Eligible for Qualified Immunity

"Even when an official is *personally* liable under § 1983, he may be shielded from paying damages when the doctrine of qualified immunity applies." DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001) (emphasis in original). This is an affirmative defense, so the defendant

bears the burden of proof.  Id.  The doctrine "shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known."  Id. (quoting Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 65 (1st Cir. 1997)). Discretionary job functions are those that involve judgments that "almost inevitably are influenced by the decisionmaker's experiences, values, and emotions."  Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982).  This contrasts with tasks that are merely "ministerial."  Id.

The police officers here, namely Frias, Gaudet, Johnson and King, are all eligible for qualified immunity because, even as alleged, they were performing discretionary functions when they determined probable cause existed to arrest Drago and followed through on this determination to arrest her.  Indeed, Drago does not contest whether the officers exercised discretionary functions.  See D. 9.

### 2.  *Qualified Immunity Bars Drago's Claims*

Because the officers performed discretionary functions when arresting Drago, the Court will consider the constitutional claims through the lens of qualified immunity.  In determining whether a government official is entitled to qualified immunity, the Court must determine:  (1) "whether the plaintiff's version of the facts makes out a violation of a protected right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Alston v. Town of Brookline, 997 F.3d 23, 50 (1st Cir. 2021) (internal citation omitted).  The latter question goes "not to whether the official actually abridged the plaintiff's constitutional rights but, rather, whether the official's conduct was unreasonable, given the state of the law when he acted." Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017).  "[T]he right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "This is not to say that an official action is protected by

qualified immunity unless the very action in question has previously been held unlawful . . . ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (internal citation omitted).

Under the Fourth Amendment, an arrest must be supported by probable cause. See Hoffman v. Reali, 973 F.2d 980, 985 (1st Cir. 1992). "[P]robable cause exists when the facts and circumstances within the [police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (alterations in original) (internal quotation marks omitted) (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987)). To defeat a claim of qualified immunity, a plaintiff must "identify controlling authority or a consensus of persuasive authority sufficient to put the officers on notice that their conduct violated the law." Est. of Rahim v. Doe, 51 F.4th 402, 413 (1st Cir. 2022) (concluding that the officers were entitled to qualified immunity where a reasonable officer would have understood suspect "had every intention to use [his] knife to kill" and distinguishing out-of-circuit case involving suspect who had complied with instructions, discarded potential weapons and not received warnings prior to use of force).[1]

The body of case law relevant to this case indicates that "[t]he uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004) (concluding that probable cause existed based on store detective's account of shoplifting, despite other evidence plaintiff

---

[1] Defendants raised two cases, Rahim, 51 F.4th 402 and Charron v. Cnty. of York, 49 F.4th 608 (1st Cir. 2022), for the first time at oral argument. The Court permitted Drago to submit a supplemental memorandum responding to this newly raised case law and has considered both cases and Drago's supplemental memorandum, D. 26, in ruling on the motion to dismiss.

argued would have dispelled suspicion). Contrary to Drago's argument otherwise, D. 26 at 2-3, "there is no requirement that the officer corroborate every aspect of every complaint with extrinsic information." Acosta, 386 F.3d at 10. That is, "even where a witness account is disputed, police officers do not have an unflagging duty to complete a full investigation before making a probable cause determination." Charron, 49 F.4th at 616. The same is true even if "the officers' initial view of events turns out to be unsubstantiated [which] does not negate probable cause to arrest." Id. at 618.

Here, even as alleged, there was sufficient probable cause to arrest Drago the first time, as there was sufficient basis for probable cause to believe that Drago had committed the crimes of criminal harassment and threats to commit crime. See Commonwealth v. Brennan, 481 Mass. 146, 149–50 (2018) (citing the elements of criminal harassment as "(1) the defendant engaged in a knowing pattern of conduct or speech, or series of acts, on at least three separate occasions; (2) the defendant intended to target the victim with the harassing conduct . . . on each occasion; (3) the conduct . . . [was] of such a nature that [it] seriously alarmed the victim; (4) the conduct . . . [was] of such a nature that [it] would cause a reasonable person to suffer substantial emotional distress; and (5) the defendant committed the conduct . . . 'willfully and maliciously'" (alterations in original) (citation omitted)); Commonwealth v. Young, 92 Mass. App. Ct. 1108, 2017 WL 4448533, at *1 (Oct. 6, 2017) (noting that the elements of a threat to commit a crime charge are "an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat") (internal quotation marks and citation omitted). The police received the following information from Coco before Drago's January 2019 arrest. First, that Coco received a blocked call from Drago in which she verbally attacked Coco and said she was going to shoot her. D. 7 at 5 (citing D. 7-1). Second, that Coco

8

was fearful because there might be guns at Drago's residence. Id. Third, she feared what Drago might do. Id. Fourth, Coco alleged that Drago abuses drugs and alcohol. Id. Fifth, that Coco's father, who had been a gun owner, had recently passed away and these guns may have ended up with Drago. Id. Additionally, Coco gave the police emails apparently from Ms. Drago that threatened her safety. Id. at 5–6.

As to the second arrest in February 2019, Coco showed the police two emails she apparently received from Drago that suggested she was intoxicated and further threatened Coco's safety. Id. at 6–7. This information established probable cause to arrest Drago for violation of the 209A restraining order against her, which included a no-contact provision. See Commonwealth v. Welch, 58 Mass. App. Ct. 408, 408 (2003) (noting that "to establish a violation of G. L. c. 209A, § 7, the Commonwealth must prove that (1) a valid G. L. c. 209A order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order" (internal quotation marks and citations omitted)). These emails allegedly from Drago also included threats against Coco if she reported her actions to the police, which provided probable cause for the witness intimidation charges. See Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 612-13 (2007) (addressing elements of intimidation of a witness charge).

Drago argues that the police failed to consider several reasons to doubt Coco's information for the first arrest. First, she says the police knew or should have known Coco "had a motive to fabricate claims against [Drago] in her attempt to obtain custody of her daughter Lilly." D. 9 ¶ 12. Second, she says Coco could not have received a blocked call from Drago because a blocked call, by its nature, does not reveal the caller. Id.; see D. 26 at 2. Third, she says a check of police records would have shown Coco's father never owned a gun and would not have been able to own

one due to his criminal record. D. 9 ¶ 12. Fourth, a check with [Department of Children and Families] or [Methuen Police Department] would have shown Coco "had not filed an abuse report or wellness check." Id. And a check with Drago would have shown she never used the name Karyn Hoff or the karynhoff1234@gmail.com email address. Id.

She likewise says the police failed to consider reasons to doubt Coco's information for the second arrest. Id. ¶¶ 20–23. First, she reiterates her argument about the contentious relationship she had with Coco. Id. ¶ 20. Second, she says the police should have known an email full of profanity and errors from a mother was dubious. Id. ¶ 21. Third, she says the police should have called her to verify the emails. Id. ¶ 22.

The police, however, had no duty to investigate further under the circumstances. In a typical case, "once a law enforcement officer unearths sufficient facts to establish probable cause, she has no constitutional duty either to explore the possibility that exculpatory evidence may exist or to conduct any further investigation in the hope of finding such evidence." Acosta, 386 F.3d at 11; see Charron, 49 F.4th at 618 (rejecting plaintiff's argument that officers could have determined that witness's story was false by taking basic measurements of the damaged cars). This is true here where, at the time of the arrests, the police did not have, even as alleged by Drago, sufficient reason to doubt the allegations. Her contention about the "blocked call" does not warrant a different outcome as the officers had the statement from Coco that Drago was the caller. D. 7-1 at 2. The same is true with the allegations about Drago's access to firearms because, even if subsequent investigation may have revealed that Coco's father could not have legally owned same, they had the allegations of a complainant that there may be guns in her residence. Id. Sadly and certainly, it is not unheard of for a family member to send messages with profanity in it to a relative

and, it is also not unreasonable to believe that people might use emails with different names.  See D. 13 at 1.

As for the contentious relationship with her daughter, the First Circuit has found no duty to investigate further under comparable circumstances.  See Holder v. Town of Sandown, 585 F.3d 500, 505–06 (1st Cir. 2009) (concluding that police had no duty to further investigate wife's assault complaint against husband even where husband and wife "were not on good terms and had given somewhat differing accounts of the encounter").  Certainly, as Defendants acknowledge, "knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations" will trigger a duty by the police to inquire further before arrest.  See United States v. Tanguay, 787 F.3d 44, 53 (1st Cir. 2015) (remanding for Franks determination when police officer affiant who had relied "entirely" on the account of an informant where he knew of reasons to doubt his veracity).  None of the circumstances that plaintiff points to here amount to obvious and unexplored reasons to doubt Coco's truthfulness.  In multiple cases, the First Circuit has concluded a witness's statement could be the basis for probable cause, even where witness and plaintiff had an antagonistic relationship.  See Charron, 49 F.4th at 613; Holder, 585 F.3d at 505–06.  The allegations do not suggest that the officers had reason to conclude that Coco was not credible as the officer did in Tanguay.  Tanguay, 787 F.3d at 53; see B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 9–10 (1st Cir. 1984).

Given that Drago does not allege a version of events wherein her Fourth Amendment rights were violated by the officers' conduct in arresting here or that such rights were "clearly established" from the perspective of reasonable officers at the time of her arrest, the Court

concludes that the officers are entitled to qualified immunity.[2]  Accordingly, the Court dismisses the claims against the individual officers as well.

**D.    Request to Amend**

Drago seeks to amend her complaint in her opposition to the Defendants' Motion to Dismiss to address the "blocked call issue."  D. 9 at 7.  Although Drago has not filed a motion to amend, see D. 13 at 2, even if she had, the Court would deny the request as futile.  See Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 25–26 (1st Cir. 2001); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990), overruled on other grounds, Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004).  Given the Court's conclusion on probable cause and consideration of all of Drago's arguments, including her allegations about the blocked call, any further development about same would be futile.

**VI.    Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 6.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] In light of the Court's conclusion that Drago's arrests were supported by probable cause, and, alternatively, that the officers are entitled to qualified immunity as a result of Drago's failure to satisfy the first prong of the test, the Court need not address Defendants' arguments as to the supervisory liability of Lieutenants Gaudet and King.  See D. 7 at 10–11.